## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## HUNTINGTON

**ANTONIO J. WHITEHEAD,**

      **Movant,**

**v.**                        **Case No. 3:13-cv-21626**
                                   **Case No. 3:09-cr-00099-04**

**UNITED STATES OF AMERICA,**

      **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 414).   Movant, Antonio J. Whitehead (hereinafter "the defendant"), is serving an 87-month[1] sentence, followed by a four-year term of supervised release.

The defendant was initially charged by a federal grand jury in two counts of a seven-count indictment addressing drug conspiracy and distribution charges.   Count One of the indictment charged the defendant with participating in a conspiracy to distribute fifty or more grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846.   Count Six of the indictment charged the defendant with possession with intent to distribute a quantity of cocaine base, in violation of 21 U.S.C. § 841(a)(1).

---

[1]  The defendant was initially sentenced to serve 108 months in prison; however, on August 19, 2015, the presiding District Judge granted the defendant's Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(2) and reduced his sentence to 87 months in prison.   (ECF No. 457).   The remainder of the Judgment entered on December 21, 2010 (ECF No. 301) is still in effect.   (*Id.*)

On September 20, 2010, the defendant waived the right to be charged in an indictment (Waiver of Indictment, ECF No. 269)[2] and pled guilty (Written Plea of Guilty, ECF No. 270), pursuant to a written plea agreement (Plea Agreement, ECF No. 271), to one count of conspiracy to distribute five or more grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846, as contained in an Amended Information (Amended Information, ECF No. 264).   In accordance with his guilty plea, defendant stipulated that his involvement in the conspiracy spanned four years, from February 2005 to at least June of 2009, and that he was responsible for the distribution of 240 grams of cocaine base.   (*Id.* at 7).   As will be discussed in greater detail, *infra*, at the plea hearing, the government also offered the testimony of the Huntington Police Detective who investigated the conspiracy in support of the factual basis for the defendant's plea.

The evidence concerning the conspiracy established that the defendant and his co-conspirators, who came from Macon, Georgia, worked together to distribute cocaine base in and around Huntington, Cabell County, West Virginia.   The evidence demonstrated that the conspirators shared customers, shared telephones used to arrange drug deals, used the same stash houses to store drugs, money and weapons, shared profits from their drug sales and pooled money to purchase additional drugs to sell.   Two of the defendant's co-conspirators, Charles Anthony Williams and Nekoase Antwan Vinson, were determined to be in charge of the conspiracy, and the defendant was determined to be "in

---

2   When referencing various documents from the defendant's criminal case, the Response of the United States cites to the Joint Appendix (J.A.) submitted with the defendant's direct appeal, which is attached to the Response (ECF No. 449) as Attach. # 1.   The undersigned has cited to the District Court's electronic case file (docket) number (ECF No.) instead of the J.A.   A table of contents containing both the ECF No. and the J.A. references can be found in Attach. # 1 at page 3.

charge of distribution on the streets."   (ECF No. 320 at 27).

As noted in the government's Response to the section 2255 motion, during the course of the conspiracy, the defendant was arrested several times on drug charges. (ECF No. 449 at 4).   At the defendant's sentencing, an Ohio State Trooper, Chad Canter, testified about his arrest of the defendant on December 4, 2008.   (ECF No. 316 at 15-25). According to Trooper Canter, he stopped the defendant's vehicle, on a road leading to Huntington, on suspicion of driving while impaired, and defendant gave a false name and two false dates of birth.   (*Id.* at 17-19).   After detecting the smell of marijuana and locating a small bag of cocaine base in the vehicle, officers conducted a pat-down search of the defendant, during which they located a .40 caliber Smith & Wesson pistol inside the defendant's pants, along with a bag containing nearly 100 grams of cocaine base, and $1,168 in cash.   (*Id.* at 19-22).

This traffic stop, which occurred during the time period in which the defendant admitted to participating in the drug conspiracy, was the basis for separate charges in Lawrence County, Ohio, which, according to the defendant, were subsequently dismissed. Based upon the testimony of Trooper Canter, which the District Court found to be credible, the defendant received a two-level enhancement, pursuant to section 2D1.1 (b)(1) of the United States Sentencing Guidelines ("USSG") for possession of a firearm during the crime of conviction.

The defendant unsuccessfully appealed his sentence to the United States Court of Appeals for the Fourth Circuit, challenging the district court's denial of his request for a minor role reduction and the enhancement of his advisory Guideline range for possession

of a firearm.   *United States v. Whitehead*, 449 F. App'x 257, 2011 WL 4640878 (4th Cir. Oct. 7, 2011).   The defendant did not seek a Petition for a Writ of Certiorari in the Supreme Court.   Accordingly, his Judgment became final on or about January 8, 2012, when the time period for filing a Petition for a Writ of Certiorari expired.

The defendant filed the instant Motion to Vacate, Set Aside or Correct Sentence (ECF No. 414) on August 8, 2013, asserting four grounds for relief, all of which appear to arise out of the imposition of the gun enhancement.   The defendant also filed a Memorandum of Law in support of his section 2255 motion (ECF No. 416), which contains additional bases for relief.

On May 30, 2014, pursuant to the undersigned's Order, the United States filed a Response to the defendant's section 2255 motion, asserting that the claims contained therein are untimely, procedurally defaulted, and substantively meritless.   (ECF No. 449).   On June 11, 2014, the defendant filed a reply brief disputing the government's arguments.   (ECF No. 451).   This matter is ripe for adjudication.

## ANALYSIS

### A.     The defendant's section 2255 motion was untimely filed.

Prior to 1996, a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 was not subject to a specific time limitation with respect to filing of the motion. However, in 1996, Congress enacted the Anti-Terrorism and Effective Death Penalty Act of 1996 (hereinafter the "AEDPA"), which established a one-year period of limitation governing the filing of motions for collateral relief under 28 U.S.C. § 2255.

The one-year period runs from the latest of one of four specified events:

> (1) the date on which the judgment on conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or Laws of the United States is removed if the movant was prevented from making such motion by governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court if that right has been duly recognized by the Supreme Court and made retroactively applicable to cases on review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

The defendant's conviction became final on January 8, 2012 when his Petition for a Writ of Certiorari was denied by the Supreme Court.   Thus, the one-year period for filing a § 2255 motion expired on January 8, 2013.   The defendant did not file his section 2255 motion until August 8, 2013.   Thus, as asserted by the United States, the defendant's section 2255 motion was untimely filed under 28 U.S.C. § 2255(f)(1).[3] Accordingly, unless the defendant can demonstrate that one of the other subsections of section 2255(f) should be applied to his case, his motion must be dismissed as untimely filed.

The defendant's section 2255 motion asserts, *inter alia*, that the imposition of a two-level sentencing enhancement under USSG 2D.1.1(b)(1) for possession of a firearm during his offense was improper because, on December 14, 2012, the Court of Common Pleas of Lawrence County, Ohio subsequently dismissed charges of possession of illegal drugs and a firearm, which he believes served as the basis for his sentencing enhancement in this court.   The defendant contends that the allegations of his possession of drugs and

---

[3]  Even applying the prison mailbox rule, *see Houston v. Lack*, 487 U.S. 266 (1988), the motion is still untimely as the certificate of service attached to the section 2255 motion indicates that the defendant mailed his motion to the court on August 6, 2013.   (ECF No. 414 at 14).

a firearm in 2008 were "false," that he is "actually innocent" of the conduct that led to the sentencing enhancement, and that the imposition of such enhancement was a "fundamental miscarriage of justice."   On this basis, the defendant also argues that his section 2255 motion should be considered timely filed under section 2255(f)(4) because he was "prevented from proceeding" while his state charges were still pending.   (ECF No. 414 at 12; ECF No. 451 at 3).[4]

As noted in the United States' Response, however:

> In the instant case, defendant claims that his motion was timely filed suggesting that he filed the motion within one year of the dismissal of a state criminal charge in Lawrence County, Ohio, connected with the facts the district court relied upon in determining that defendant was eligible for the 2-level firearm enhancement.   ECF 416 at 7-8.   While defendant claims that the Lawrence County charges were dismissed on December 14, 2012, he did not produce any records corroborating that contention. Furthermore, even if the defendant correctly cites the date of dismissal for the Lawrence County charges, the dismissal does not represent "facts supporting the claim" he presents.
>
> During the sentencing hearing in the underlying case, defendant's counsel argued that the district court should not rely upon the pending

---

4   The defendant's Motion (Ground Three) and Memorandum of Law further assert that his sentence is improper in light of the Supreme Court's recent decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), in which the Court held that facts that increase a mandatory minimum sentence are elements of the offense and must be submitted to the jury and found beyond a reasonable doubt.   *Alleyne* is an extension of the decisions in *Apprendi v. New Jersey*, 520 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004), which found that facts increasing a statutory maximum sentence must be submitted to the jury and proved beyond a reasonable doubt, and *United States v. Booker*, 543 U.S. 220 (2005), applying *Apprendi* to the Sentencing Guidelines and resulting in the same being made advisory.   The defendant asserts that the District Judge "abused his discretion" and violated the defendant's Sixth Amendment rights when he, rather than a jury, determined, by a preponderance of the evidence, material facts that increased the defendant's sentence.

The defendant's gun enhancement did not implicate either a statutory mandatory minimum or a statutory maximum.   The defendant was exposed to a five-year mandatory minimum based upon the charge to which he pled guilty, and he was sentenced within the statutory maximum.   Additionally, the gun enhancement was imposed pursuant to an advisory Guideline scheme.   Therefore, none of these decisions affects the defendant's sentence.   Moreover, the defendant's Judgment was final prior to the ruling in *Alleyne*, which has not been made retroactively applicable to cases on collateral review.   Therefore, the defendant's reliance on that case does not affect the timeliness of his section 2255 motion.

> Lawrence County, Ohio, charge as a basis for applying the gun enhancement that defendant complains of in the instant petition.   J.A. 105-07.   At that time, the United States called a witness, Trooper Chad Canter of the Ohio State Highway Patrol, to testify regarding defendant's possession of a firearm.   J.A. 107-16.   Trooper Canter testified that he located a loaded .40 caliber Smith & Wesson handgun on defendant's person, and the incident occurred during the time period of the charged conspiracy.   J.A. 113.   It was based on this testimony that the Court applied the 2-level gun enhancement in the defendant's case.   J.A. 117.   The district court did not base its finding on any pending charge or conviction from Lawrence County, Ohio, and dismissal of those charges has no effect on the information the district court relied upon in making the finding.   Furthermore, the Fourth Circuit affirmed the district court's application of the gun enhancement.

(ECF No. 449 at 11-12).

The charges filed against the defendant in Lawrence County, Ohio, while arising out of the same facts that supported the defendant's two-level gun enhancement under USSG 2D1.1(b)(1), were not the basis for such enhancement.   Rather, the District Court relied upon the testimony of Trooper Chad Canter to find that the defendant's possession of a firearm and drugs in Lawrence County occurred during the time of the admitted drug conspiracy with which the defendant was charged in the Southern District of West Virginia.   The fact that the Ohio charges were dismissed does not make the defendant "actually innocent" of the facts supporting the gun enhancement, which the presiding District Judge found to be credible based upon Trooper Canter's testimony.   The defendant has offered no affirmative evidence to demonstrate that he did not possess a firearm and drugs at that time or that Trooper Canter's testimony was false.   Moreover, the defendant certainly has not in any way demonstrated that he is "actually innocent" of the underlying crime with which he was charged.   Accordingly, he cannot overcome the untimeliness of his section 2255 motion based upon any miscarriage of justice.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the dismissal of the Ohio charges is not a basis for running the statute of limitations under 28 U.S.C. § 2255(f)(4) and that the defendant's instant section 2255 motion is, thus, untimely.   Moreover, even if the section 2255 motion were somehow found to be timely, the undersigned proposes that the presiding District Judge **FIND** that the defendant is not entitled to re-sentencing on this basis.

### B.      The plaintiff has not established ineffective assistance of counsel.

In Ground Four of his section 2255 motion, the defendant asserts that his Sixth Amendment rights were violated because his attorney, Sebastian Joy, erroneously advised him that he faced a 480-month sentence and that he would be considered a major participant in the conspiracy and, thus, misled him about the effect of the plea agreement. The defendant further asserts that Mr. Joy was in collusion with the prosecutor and failed to present a vigorous defense on the defendant's behalf.   Consequently, the defendant contends that his guilty plea was "coerced" and that, if he had been correctly advised, he would have gone to trial and been found "not guilty."

The Supreme Court addressed the right to effective assistance of counsel as guaranteed by the Sixth Amendment in *Strickland v. Washington*, 466 U.S. 668 (1984), in which the Court adopted a two-pronged test.   The first prong is competence; movant must show that the representation fell below an objective standard of reasonableness. *Id.* at 687-91.   There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.    *Id.* at 688-89.

8

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.   The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.* at 694.   The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice.   *Id.* at 697.   "[A]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if that error had no effect on the judgment."   *Id.* at 691.

The United States asserts that the defendant has failed to cite any specific facts or circumstances that demonstrate that Mr. Joy's representation was inadequate.   Their Response further states:

> Mr. Joy filed a sentencing memorandum and argued vigorously for a downward departure and made several objections to the guideline calculation that the district court ultimately imposed.   J.A. 93-136.   Mr. Joy also appealed the district court's application of the firearm enhancement and denial of the minor role departure to the Fourth Circuit. The record establishes the Mr. Joy launched a zealous defense for defendant and acted in an objectively reasonable manner throughout the proceedings. Defendant, therefore, has not established the first requirement of the *Strickland* test.

(ECF No. 449 at 18-19).

The focus of the defendant's ineffective assistance claim, however. appears to be in the advice surrounding his guilty plea, which is not directly addressed by the government's response.   The defendant's Memorandum of Law states in pertinent part:

> The petitioner, Antonio Whitehead was subjectively DEPRIVED of his Fifth and Sixth Amendment Rights, to make a determination as to the consequences that he was facing.   When he MISADVISED him to ACCEPT a plea agreement on charges that he was "Not Guilty" of; by the use of THREATS, INTIMIDATION, and COERCION.   Petitioner's counsel MISADVISED him, that "if he did not accept the government's plea offer, that he would be found guilty anyway and spend the next 480 months in prison.

> To prove prejudice concerning the negotiation of the plea, the defendant MUST show that there IS a reasonable probability THAT but for counsel's error, he WOULD NOT have pleaded guilty, and WOULD HAVE INSISTED ON GOING TO TRIAL! * * *

> The petitioner's counsel's "erroneous" legal advice CAUSED him to plea bargain to a charge THAT he "DID NOT" commit.   Be [sic] he scard [sic; scared] him to death with the "forsure" [sic; for sure] prediction that a jury would without a doubt find him guilty of the prosecutor's charges and that he would most definitely spend the next 480 months in prison.   That erroneous prediction by his counsel of record – certainly does demonstrate a "Gross" – ERROR on the part of a defense counsel.

(ECF No. 416 at 27-28).

The Supreme Court previously addressed an ineffective assistance of counsel claim predicated on an erroneous sentence estimate which allegedly resulted in a guilty plea. *See Hill v. Lockhart,* 474 U.S. 52, 54 (1985). In *Hill,* the Court first found "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." 474 U.S. at 58.   However, the Court further indicated that, in order for *Strickland's* prejudice prong to be satisfied in this context, "the

defendant must show that he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 58-59.

Where a defendant asserts ineffective assistance of counsel due to an erroneous estimate concerning the defendant's sentence exposure which allegedly induced him to plead guilty, the majority of courts, including the Fourth Circuit, have found that, "'misadvice respecting sentencing possibilities' could not be a 'but for' cause of a guilty plea where the plea is 'based on risk information given ... by the sentencing court.'" *United States v. Foster,* 68 F.3d 86, 88 (4th Cir.1995) (quoting *United States v. Craig,* 985 F.2d 175, 179-80 (4th Cir.1993)).

Thus, a guilty plea predicated on counsel's allegedly inaccurate sentence estimate, alone, is insufficient to constitute ineffective assistance of counsel, because the subsequent Rule 11 colloquy serves to correct any misinformation by counsel.  *See also United States v. Lambey,* 974 F.2d 1389, 1395 (4th Cir.1992) (*en banc*) (noting that where "the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and the defendant.").

At the defendant's Rule 11 plea hearing, the defendant's counsel and the Assistant United States Attorney summarized the plea agreement in open court.  (ECF No. 320 at 5-10).   The court then read the Amended Information to the defendant, who subsequently admitted his guilt and described his own conduct that supported a finding that he participated in the drug conspiracy with which he was charged.   (*Id.* at 14-22).

To further establish the factual basis for the plea, the government presented the testimony of Paul Hunter of the Huntington Police Department concerning facts that he had learned during his investigation of the conspiracy.   The defendant did not contest the factual basis of the plea.   (*Id.* at 23-28).

The District Court verified the petitioner's understanding of all of the rights which he was giving up, including the right to a jury trial.   (*Id.* at 12-14; 28-36).   The District Court also advised the defendant that, if he went to trial, he was exposed to a maximum potential sentence of 40 years (or 480 months), as the defendant was also correctly advised of by his counsel.   (*Id.* at 29).   The defendant stated under oath that no one had attempted to force, coerce or threaten him to plead guilty, and he acknowledged that it was his own free and voluntary decision to plead guilty.   (*Id.* at 35-36).   He further stated that he was completely satisfied with the legal assistance and advice that his counsel had provided him.   (*Id.* at 5).

The Court determined that the defendant was fully competent and capable of entering an informed plea.   The Court also found that the defendant understood the nature of the charges contained in the Amended Information and understood the rights he was giving up by pleading guilty, including all those rights associated with a jury trial. The Court further found that the defendant understood the maximum statutory penalty to which he was subjecting himself by pleading guilty. Accordingly, the Court found that the petitioner had made a knowing, voluntary, and intelligent plea of guilty.   (*Id.* at 36).

The defendant's assertions in his section 2255 motion and Memorandum of Law directly contradict his stipulation and affirmations in his plea agreement and his sworn

statements during the plea hearing.   Moreover, in addition to his own admissions, the defendant has not rebutted the evidence proffered by the government at his plea hearing which supports his conviction on the conspiracy charge.   Thus, he has not demonstrated any reasonable likelihood that he would have been acquitted by a jury.

By virtue of his plea agreement, the defendant received a three-level reduction in his Guideline sentence calculation for acceptance of responsibility which would not have been available had he gone to trial and been convicted.   Additionally, had the defendant gone to trial, he risked being convicted of both counts of the indictment, rather than the one count of conviction contained in the Amended Information to which he pled guilty, which could have exposed him to an even greater sentence.

Furthermore, as noted by the government, at sentencing, Mr. Joy vigorously argued for reductions and a variance in order to minimize the defendant's sentence exposure.   Therefore, there is no evidence to demonstrate either that Mr. Joy's performance fell below an objective standard of reasonableness, or that the defendant suffered undue prejudice as a result of his decision, based upon the advice of counsel, to plead guilty.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that, even if the defendant could demonstrate that his section 2255 motion was timely, his Sixth Amendment ineffective assistance of counsel claim lacks merit and, thus, he is not entitled to any relief under section 2255 on that basis.

**C.    The plaintiff's claims, other than his claim of ineffective assistance of counsel, were waived by his plea agreement.**

The defendant's written plea agreement specifically waived his right to pursue collateral relief on any claims other than those alleging ineffective assistance of counsel. (ECF No. 271 at 4, ¶ 11).    As noted by the United States, the United States Court of Appeals for the Fourth Circuit has generally enforced knowing and voluntary waivers of appellate and collateral review. *See United States v. Wiggins*, 905 F.2d 51, 53 (4th Cir. 1990); *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005).

Grounds One, Two and Three of the defendant's section 2255 motion are grounded in trial court error and/or abuse of discretion, not ineffective assistance of counsel. Thus, they fall squarely within the waiver provisions of the defendant's written plea agreement.    The defendant has not demonstrated that his guilty plea and plea agreement were involuntary.    Therefore, even if the defendant's section 2255 motion were somehow determined to be timely filed, the undersigned proposes that the presiding District Judge **FIND** that the defendant's claims for relief contained in Grounds One, Two and Three of his section 2255 motion are barred by the voluntary and valid waiver provision of his plea agreement.

**D.    The defendant is not entitled to relief under 28 U.S.C. § 2241.**

In his Memorandum of Law, the defendant alternatively asserts that, if he is not eligible for relief under section 2255 because of the statute's gatekeeping provisions, he should be granted relief under 28 U.S.C. § 2241.    This argument also fails.

Motions under 28 U.S.C. § 2255 are the primary remedy for testing the validity of federal judgments.    28 U.S.C. § 2241 is generally used to address matters concerning the

execution of a federal sentence, and is not an additional, alternative or supplemental remedy to that provided in section 2255, unless the defendant can show that the remedy under section 2255 is inadequate or ineffective to test the legality of the defendant's detention.   *In re Jones*, 226 F.3d 328, 333 (4th Cir. 2000) ("[W]hen § 2255 proves 'inadequate or ineffective to test the legality of . . . detention,' a federal prisoner may seek a writ of habeas corpus pursuant to § 2241.").   *In re Jones* relies upon the statutory language presently found in 28 U.S.C. § 2255(e), which states:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

This section is known as the "savings clause."   The fact that relief under section 2255 is procedurally barred does not render such remedy inadequate or ineffective to test the legality of the petitioner's detention.   *Id.* at 332.

In *Jones*, the Fourth Circuit established a three-factor analysis for determining whether the remedy under section 2255 is inadequate or ineffective:

> (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the petitioner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

*Id.* at 333-334.

The defendant has not demonstrated that there has been an intervening change in substantive law that has established his actual innocence <u>of the underlying conviction</u>.

As noted above, the savings clause contained in section 2255(e) cannot be used to circumvent the stringent gatekeeping requirements and procedural bars of section 2255 and will not permit review of the defendant's claims under section 2241.   Thus, the undersigned proposes that the presiding District Judge **FIND** that the defendant has failed to demonstrate that section 2255 is inadequate or ineffective to test the legality of his detention and, thus, his claims are not proper for consideration under 28 U.S.C. § 2241.   Moreover, a section 2241 petition should be filed in the court with jurisdiction over the facility where the defendant is in custody.

## RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** the defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (ECF No. 414) and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, Chief United States District Judge.   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and

Recommendation to which objection is made, and the basis of such objection.    Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.    *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985*); United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).    Copies of such objections shall be served on opposing parties and Chief Judge Chambers.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Movant, who is presently incarcerated at USP Coleman I, in Sumterville, Florida, and to transmit it to counsel of record.

August 1, 2016

                                        Dwane L. Tinsley
                                        United States Magistrate Judge